Good morning, Your Honors. May it please the Court, Carolyn Wiggin from the Federal Defender's Office for Mr. Powell. And I am going to try to reserve two minutes for rebuttal if I can. Your Honors, I would like to start this morning by talking about the second issue in the case. I first note that every court that has looked at this issue has agreed that the jury instruction for attempted voluntary manslaughter was defective. It told the jury that they could convict whether they found Mr. Powell had the intent to kill or acted with conscious disregard. So there's no real debate that the prosecution was relieved of its burden of proof on the mens rea for the crime. The debate has been over whether a court can say this error was harmless or not. Prejudicial. Prejudicial. And that relates to whether it's an unreasonable determination of the facts, right? In light of the evidence presented? Correct, Your Honor. With sort of a legal twist on that factual question, what the California Court of Appeal and then the district court in this case have relied on is sort of doing what we would normally do in a sufficiency of the evidence argument. They've looked and they've said, well, we look at this record and we think there's enough that a jury could have found specific intent to kill. But I think what they have ignored is that every indication is that that is precisely what the jury found was not proven beyond a reasonable doubt when it acquitted Mr. Powell of attempted murder. We know that it found that he shot at Ms. Green because he was convicted of assault with a deadly weapon. They found the enhancement true. Am I correct, counsel? Forgive me for interrupting, but am I correct that he fired from about two feet away from the backseat? There was some testimony supporting that. There was other testimony. Was there any testimony contradicting that? No, Your Honor, there wasn't. All right. Thank you. So I would agree that. I mean, my worry with my questioning, and I appreciate my colleagues' questions because I had that down as something to ask you. But my worry is that this is an AEDPA case. Correct. This is a case where I have to rely on habeas determination by the California Court of Appeal, which said it's an error, no question. Correct. They just said even though error, it's not prejudicial. Correct. So it seems to me that then we're bound by the California decision as to the error because I'm not going to go against that decision. And I think Dixon v. Williams kind of gives me that idea anyway. So I guess what I have to do is I have to say, well, I even think Dixon says it might be a constitutional error. And so then I think it has to be overcome if one has grave doubts as to the harmlessness of the error. So the $500 question then, is it prejudicial? Now, my worry is, can I say the California Court of Appeal is so out of it, based on what I understand to be our law, that I can't affirm? I think this is, I realize AEDPA puts, you know, it's a very deferential standard for reviewing state court decisions. Well, and frankly, if our court has been reversed, it's been in this area where we try to substitute our judgment for that of a state court. I think this case is very unique, not likely to be repeated often, because in this case, we have a jury verdict, not a court ruling, a jury verdict that pretty much tells us the jury in this case found he did not have intent to kill. I think that makes it unique from many of the AEDPA cases that have come before this Court. And I'm not even asking for a ruling that definitely there's no way they could have convicted. The question is, should a court under Brecht have a grave doubt as to whether this error affected the outcome? I think given the indication that the jury in this case, this is precisely the element they didn't find, then we have to say we have a grave doubt that this jury instruction did infect the trial and lead to a violation of Mr. Powell's right to have every element proven beyond a reasonable doubt. So I think this case is very unique. Normally, you don't know exactly what the jury was doing, but here I think we can say it does definitely appear that this was the one element where they found there's not proof beyond a reasonable doubt. Let me ask you this. The jury was instructed, as I read the instructions, that more than intent to kill was necessary to convict of the attempted murder. Right. Basically... Reading the instructions, then, one must also have the intent that must precede the act, and the attempt must be deliberate. Your Honor, the part of the... I mean, that seems to me what the jury instructions say. When it comes to the mens rea, though, they are told you can find either intent to kill or that he acted with conscious disregard. Well, but the jury also knew that the intent might be mitigated by an act under sudden quarrel or heat of passion, making it manslaughter instead of attempted murder. That's also in the instructions. Right, but I do think they are told that you can find either intent to kill or that mitigated state of mind. Well, the reason I went through there, because I looked at the instructions, because they're very helpful to me in determining whether I should really... I mean, what is the Supreme Court case that I'm going to use here to suggest the California court is out to lunch? Well, I think Sandstrom says every defendant has a due process right to have... So you think Sandstrom is my best case? For the due process violation. I think Brecht says when we get to a flawed jury instruction, we ask, do we have a grave doubt as to whether this is... Okay, so Brecht is my ultimate... Because the California court said in closing argument, the prosecution discussed the fact that attempted voluntary manslaughter was a possible alternative. The defense never addressed the issue, instead argued that the prosecutor had never established that the defendant was the shooter. The evidence that the plaintiff was the shooter and shot green was substantial. Right. I mean, those are the things that they suggested would say this is not prejudicial. And so I'm looking at what Supreme Court case would say they couldn't get there. Well, I think that if they had convicted for attempted murder, and I came to you with the sufficiency of the evidence argument, then that would be perfectly appropriate to say, look, there's all this evidence that can support intent to kill. But that's not what happened. They acquitted of attempted murder. Now, what the California Court of Appeal and later courts have done, the district court has said, but look, we see all this evidence that he had intent to kill. That's fine, but it ignores the fact that the jury actually acquitted him of that crime. So that's what I ask the court to look at. In this case, I think that is enough to raise doubt as to the effect the instruction had on this jury. I will save my last moment and a half. I think you have a minute and a half left, so I let you save that. Thank you. All right. We'll listen to the State. May it please the Court. Opposing counsel's right that all the courts have agreed that the instruction in this case was erroneous, but all the courts that have looked at it have also agreed that it was not prejudicial. This was a finding of fact that was reasonable under the circumstances and needs to be deferred to by this Court. The Court can look at three things in determining the potential prejudice of an erroneous instruction. The first is the instructions as a whole, and I think it's important to stress that the jury finding of attempted voluntary manslaughter did not mean that they found there was no intent to kill. They could get to attempted voluntary manslaughter under the instruction that tells the jury there's no malice if the act was done under a sudden quarrel or heat of passion. There's still intent to kill under that prong. It's just no longer malice, no longer the type of malice you need for murder. What does Brecht do to this analysis in your understanding? Well, Brecht provides that there has to be a grave doubt as to what the jury would have done. It makes the standard even more difficult for the defense to show here. And looking at the evidence, there certainly is no grave doubt that there was an intent to kill. As the Court pointed out, the first shot that went into the victim's back and ended in her abdomen was at close range from the backseat of the car. It was directly into her back. But it didn't stop there. The defendant, when the victim started to flee in broad daylight, the defendant chased after her and continued to fire shots. One hit her elbow. There were four shots fired in all. Under these circumstances, especially with the shot at close range, there is simply no grave doubt that there was an intent to kill exhibited by the defendant. And finally, the last thing you can look at is the argument of counsel, and that simply also does not provide any type of grave doubt, as Brecht would require. The prosecution argued they should find manslaughter. They shouldn't find manslaughter, that they should find murder. And the defense didn't address the instruction at all. The defense was simply that it was a mistaken identity. So all of this combined, the State court application of the facts was reasonable and certainly doesn't rise to Brecht error. Unless the Court has any questions, I'll submit. All right. Thank you very much. Thank you. Counselor, you do have a minute and a half. I'll give it to you. I think she addressed the very argument you made, so I don't know if there's anything extra, but whatever you want to give me, I'm glad to hear. Thank you, Your Honor. I will just say briefly on the issue we've been debating about, if the jury had found intent to kill, it would have convicted him of attempted murder. It did not do that. It certainly found that he was the shooter, but it appeared and it convicted him of assault with a deadly weapon. But it appears that is the one element the jury didn't find. And I don't think the Court should ignore that or second-guess that. Well, again, your arguments seem good to be made to the Court who is ultimately deciding it, which was the California Court of Appeal. And now I have to give deference, and so when I don't give the deference is when the Supreme Court said, you're just out to lunch on that. That is not the way it could have been. And if Breck's the best you have on that, I do believe counsel's pretty well suggested what Breck does to this decision. I actually think, even under AEDPA, there are still cases where the federal court should come in and say, you know, everyone agrees it was a bad instruction. It went to an element of the offense. What Supreme Court case would say I should do that? Well, Sandstrom is one. Sandstrom is your best? Is my best. Okay. And I see I'm almost out of time. I could address the other issue. No, there's no sense. You went to the issue. She went to that. I think we'll just go on. Thank you. Thank you very much. Case 12-15608, Powell v. Reynolds is submitted.
judges: Fernandez, Smith, Christen